UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| AWOK ANI-DENG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 4:12-cv-00084-SEB-TAB |
| JEFFBOAT LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is now before the Court on Defendant's Motion for Summary Judgment [Docket No. 49], filed on December 2, 2013. Plaintiff, Awok Ani-Deng, has brought this action against her former employer, Defendant, Jeffboat LLC ("Jeffboat"), alleging that Jeffboat: (1) retaliated against her for complaints of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; (2) refused to honor her recall rights under the collective bargaining agreement ("CBA"), in violation of 42 U.S.C. § 1981; and (3) violated the Equal Pay Act ("EPA") by paying her less than her male counterparts based on her sex. For the reasons detailed in this entry, we GRANT Defendant's Motion for Summary Judgment.

**Factual Background**

Jeffboat, an Indiana corporation, is in the business of barge construction. It is a heavy manufacturing industry, utilizing cranes and forklifts to move steel materials used in the construction of barges, which can be as large as 54 feet wide by 300 feet long and

1

weigh as much as 950 tons. Ani-Deng is a Sudanese woman who was employed by Jeffboat as a welder until she was laid off as part of a reduction in force on October 19, 2011.

**Plaintiff's First Aid History and Reclassification**

Throughout Ani-Deng's employment with Jeffboat, she accumulated fourteen workplace incidents requiring the administration of first aid. On two separate occasions during a two-week period in June 2011, Ani-Deng overheated while welding in a confined space and had to be removed from the shipyard. Specifically, on June 6, 2011, Ani-Deng became overheated while welding inside a barge, and again, on June 21, 2011, she became overheated while welding inside a sidebox, which caused her to become dizzy and vomit.

As a member of the General Drivers, Warehousemen and Helpers Local Union No. 89 ("the Union"), the terms of Ani-Deng's employment were governed by the CBA, which sets forth the basic agreement between Jeffboat and the Union employees regarding rates of pay, hours of work, and conditions of employment to be observed by the parties, including the process of resolving alleged grievances. Under the CBA's Management Rights provision, Jeffboat has the right to direct its work force, including the "right to hire, classify, assign, suspend, promote, demote and discharge for proper cause or to transfer." Schultheiss Aff. ¶ 5. According to Rick Schultheiss, Jeffboat's Labor Relations Manager, Jeffboat and the Union agree that the safety and well-being of an employee may be sufficient "proper cause" for reclassification under the contract. *Id.*

Jeffboat contends that following the second overheating incident its management reviewed Ani-Deng's first aid history and became concerned for her future safety based on the increase in frequency and severity of the first aid incidents documented in her file. Thus, according to Jeffboat, in an effort to ensure her personal safety and the safety of others, it decided to reclassify Ani-Deng from a Welder 1 Class to a Welder 3 Class position. The Welder 1 Class is unique compared to other types of welders in that Welder 1 Class can work on vertical and overhead surfaces, which is called "out of position" welding, and is the type of welding Ani-Deng was performing on the two occasions when she overheated in June 2011. Unlike Welder 1 Class, the Welder 3 Class position does not require welding in high areas or close confines. Jeffboat notified Ani-Deng of this reclassification on June 28, 2011. Following her reclassification, Ani-Deng required no further first aid on any occasion.

Ani-Deng did not experience any break in employment as a result of her reclassification, but her pay as a Welder 3 Class was less than that she received as a Welder 1 Class. However, her hourly rate was the same as all other Jeffboat employees classified as Welder 3 Class, five of whom were men and two who were women.

**Plaintiff's EEOC Charges**

In August 2011, Ani-Deng filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Jeffboat retaliated against her for filing a prior

EEOC charge on February 18, 2011[1] in reclassifying her from Welder 1 Class to Welder 3 Class. In her EEOC charge, she also alleged that she "was laid off with no reason given," although she subsequently admitted that she was not in fact laid off in August 2011. The EEOC issued a right to sue notice on April 24, 2012.

**Plaintiff's Layoff as Part of Reduction in Force**

On October 19, 2011, Ani-Deng was laid off as part of a company-wide reduction in force ("RIF"). The CBA dictates the manner in which RIFs are to be conducted and provides for a seniority system based on length of tenure with the company. In the event of a layoff, the CBA requires that the least senior employee be laid off first. Jeffboat maintains a seniority list for this purpose and each employee has the opportunity to examine the list and object to its accuracy. Protests regarding the seniority list must be made in writing by the employee to his or her union steward, who will then initiate the grievance process by filing the protest. Here, Ani-Deng interposed no protest or other objection to the seniority list nor did she challenge the basis of her layoff by filing a grievance with the Union or a charge of discrimination with the EEOC.

Because RIFs are often temporary, the CBA includes procedures by which employees are subject to recall for employment. Specifically, the CBA provides that, as long as the employee has acquired seniority pursuant to the CBA, a Jeffboat employee who is laid off is entitled to Recall Rights. Ani-Deng was recalled to employment in January 2012. Although it was not required by the CBA, on January 23, 2012, the Union

---

[1] Ani-Deng's February 2011 EEOC charge alleged discrimination on the basis of her sex and national origin. The EEOC issued a right to sue notice, but she did not file suit within the limitation period.

Steward, Ronnie Waiz, and Evelyn Miller of Jeffboat's Human Resources Department telephoned Ani-Deng in an attempt to notify her that she would be receiving a letter from Jeffboat regarding her recall. However, they were unsuccessful in reaching her. The following day, pursuant to Article IX, Section 9 of the CBA, Jeffboat sent a certified letter to Ani-Deng's last known address, informing her that she was being recalled and was required to report to Jeffboat Human Resources by 3:30 p.m. on January 30, 2012, five working days after the letter was mailed.

The CBA requires that the certified letter be mailed to the "last known" address of the employee, which is the last address of record on file. The CBA provides that it is the employee's obligation to notify Jeffboat of any change in address. At the time of Ani-Deng's recall in January 2012, she had moved, but had not notified Jeffboat of her new address.

After the letter was sent, Waiz and Miller again attempted to telephone Ani-Deng to alert her to the fact that she was being recalled, but were again unsuccessful in reaching her. Around that same time, Waiz spoke with Jim Kincaid, the Assistant to the President for the Union about Ani-Deng's recall. Kincaid suggested that Waiz try to reach Ani-Deng's huspand, Elhadi Borhan Warak, who also worked at Jeffboat, to inform him that his wife was being recalled. Following that conversation, Waiz spoke with Elhadi and told him that the certified letter would be coming in the mail and emphasized that Ani-Deng would need to make a timely response so she could return to work.

Ani-Deng neither physically reported to work nor contacted Jeffboat by the close of business on January 30, 2012 to provide notice of her intent to return to work. Instead,

5

Elhadi called Jeffboat on Ani-Deng's behalf after business hours on January 30 and, because the office was already closed, left a message on Miller's voicemail. However, because the response came after the close of business on January 30, Jeffboat informed Ani-Deng by letter that she had been removed from the Jeffboat recall list in accordance with Article IX, Section 4 of the CBA.

**The Instant Litigation**

On July 23, 2012, Ani-Deng filed the instant complaint. On June 19, 2013, the Court granted Jeffboat's motion for judgment on the pleadings as to Ani-Deng's Title VII claim based on her first EEOC charge and her intentional infliction of emotional distress claim and denied the motion as to all other claims. Jeffboat has now moved for summary judgment on Ani-Deng's remaining claims brought pursuant to Title VII, § 1981, and the Equal Pay Act. That motion is now fully briefed and ready for decision.

<u>**Legal Analysis**</u>

**I.    Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255.

However, neither the "mere existence of some alleged factual dispute between the parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one

essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. *Seener v. Northcentral Technical Coll.*, 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.*, 94 F.3d 353, 354 (7th Cir. 1996). To that end, we carefully review affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997).

## II.   Title VII Retaliation

Ani-Deng first alleges that Jeffboat retaliated against her for filing an EEOC charge in February 2011 by reassigning her from a Welder 1 Class to a Welder 3 Class position in June 2011 and by putting her on layoff for one day in August 2011. To

establish a claim for retaliation, a plaintiff must prove that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal relation between the two. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). We address Ani-Deng's retaliation claims in turn below.[2]

### A. Reassignment

There is no dispute that Ani-Deng engaged in statutorily protected expression when she filed her charge of discrimination with the EEOC on February 18, 2011, and that she suffered an adverse employment action some four months later when she was demoted from Welder 1 Class to Welder 3 Class on June 28, 2011. However, as detailed below, we find that the evidence before us fails to establish a causal relationship between the two events sufficient for her to prevail on her Title VII retaliation claim.

To survive summary judgment, Ani-Deng must have "proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013). To satisfy this burden, Ani-Deng may present either direct or circumstantial evidence of retaliatory intent, which can include suspicious timing, ambiguous statements or behavior towards other employees in the protected group; evidence that similarly situated employees outside of the protected group systematically received better treatment; or evidence that the

---

[2] In Ani-Deng's responses to interrogatories, she also cited conduct that allegedly occurred between August 27, 2010 and February 11, 2011 as potential adverse employment actions. However, those events occurred before she filed her EEOC charge on February 18, 2011, and thus, cannot be the basis for a retaliation claim as they took place before Ani-Deng engaged in statutorily protected expression.

employer offered pretexual reasons for an adverse employment action. *Teruggi v. CIT Group/Capital Fin., Inc.*, 709 F.3d 654, 659-60 (7th Cir. 2013).

Ani-Deng points first to the affidavit testimony of Evelyn Miller, a former Jeffboat employee who was employed in the payroll and human resources departments at the time of Ani-Deng's reclassification, in an attempt to satisfy the causation element on her claim. In her affidavit, Miller testified that: "The real reason [Ani-Deng] was demoted was that she complained about how she was treated as a woman, as an African, and as a non-English speaker by those who had supervision over her work, as well as Rick Schultheiss, himself. Her demotion/reclassification was in response to the complaints she submitted to Jeffboat Human Resources and her complaint to the EEOC." Exh. 2, ¶ 5. Miller further testified that she had heard Schultheiss complain on one occasion that Ani-Deng "cried too much." *Id.* ¶ 6. According to Miller's testimony, there were many Caucasian and male workers who required first aid due to overheating both before and during the time period in which Ani-Deng required first aid, and yet they experienced no demotion or reclassification. *Id.* ¶ 7.

It is well-established under Seventh Circuit law that "conclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 894 (7th Cir. 2003) (citation omitted). Here, the statements contained in Miller's affidavit are nothing more than general assertions without independent facts or other proof to support those allegations. Neither Miller nor

Ani-Deng has provided either the name or any other detailed information about any Jeffboat employee who was allegedly similarly situated and treated differently or more favorably than Ani-Deng so as to allow the court to determine whether suitable comparators exist. Moreover, isolated and ambiguous comments that are not contemporaneous with or causally related to the adverse employment action such as the one attributed to Schultheiss by Miller, to wit, that Ani-Deng "cried too much," are insufficient to support a retaliation claim under Seventh Circuit law. *See Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 604-05 (7th Cir. 2012) (comment that manager was "out to get" the plaintiff was insufficient to overcome summary judgment); *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1072 (7th Cir. 2012) (ambiguous comment unrelated to adverse action was insufficient to defeat summary judgment); *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721-22 (7th Cir. 2008) (same).

Ani-Deng also relies on a letter written by Jim Kincaid, Assistant to the President of Teamsters Local 89, in support of her contention that Jeffboat's reason for demoting her to Welder 3 Class was retaliatory. Kincaid's letter, dated August 12, 2011, was apparently submitted to the EEOC in support of Ani-Deng's charge of discrimination. In it Kincaid states that he is not aware of a Jeffboat employee having ever been demoted for too many first aid visits from the time he began working with Jeffboat in May 1990 until Ani-Deng was disqualified for that reason. However, the letter also acknowledges that approximately one week after Ani-Deng was disqualified, a male Jeffboat employee (of unidentified national origin) was demoted for the same reason. Kincaid's letter was

written prior to the resolution of either grievance. Thereafter, in resolving both Ani-Deng's grievance and the other employee's grievance referenced in Kincaid's letter, Jeffboat and the Union (of which Kincaid is a part) reached an agreement that the safety and well-being of an employee may be sufficient "proper cause" under the CBA for reclassification. Even if we were to treat the statements contained in the letter as not hearsay, thereby making them admissible on summary judgment, nothing about the fact that Jeffboat reclassified for the same reason two employees (one of whom had engaged in protected activity and one of whom apparently had not) and dealt in the same manner with both of their grievances relating to their respective reclassifications evidences a retaliatory intent.

Nor does the timing between Ani-Deng's protected activity and the reclassification to Welder 3 Class raise any suspicion. Although a four-month interval between protected activity and an adverse job action does not necessarily preclude a retaliation claim, the Seventh Circuit has routinely held that even a two-month gap is too significant to support a claim of retaliation, absent other evidence of retaliatory intent. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010) (two months); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven weeks); *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 952-53 (7th Cir. 2001) (*en banc*) (six weeks). For the reasons detailed above, because the record does not contain sufficient evidence of retaliatory intent, we hold that the four plus month gap at issue here is insufficient to support Ani-Deng's retaliation claim.

### B. Layoff

Ani-Deng also alleges that Jeffboat retaliated against her by sending her a layoff notice in August 2011. However, Ani-Deng concedes that the layoff notice she received was later retracted and that she suffered no break in employment as a result. Receipt of a subsequently withdrawn layoff notice which resulted in no break in employment is insufficient to satisfy the adverse employment action element of a Title VII retaliation claim. *See, e.g.*, *Diaz Diaz v. Crowley Liner Servs., Inc.*, 281 F. Supp. 2d 340, 351 (D.P.R. 2003) (holding that layoff notice that was later withdrawn does not constitute adverse employment action required for Title VII retaliation claim). Accordingly, Ani-Deng's retaliation claim based on this theory does not survive summary judgment.

### III.  42 U.S.C. § 1981

Ani-Deng alleges that Jeffboat discriminated against her in violation of 42 U.S.C. § 1981 by not affording her recall rights when other employees outside the protected class were recalled. Section 1981 prohibits discrimination in the creation and enforcement of contracts and provides, in relevant part, as follows: "All persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts … includ[ing] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a), (b). Claims brought pursuant to § 1981 are evaluated in the same manner as Title VII discrimination claims. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998). To prevail, a plaintiff must prove that any discrimination against her by her employer was intentional. *Ghosh v. Getto*, 146 Fed.

App'x 840, 845 (7th Cir. 2005) (citing *id.* at 751). A plaintiff can meet this burden using either direct or indirect evidence. *Id.*

The sole argument Ani-Deng puts forth in support of her § 1981 claim is that Jeffboat inconsistently applied its policy of using the close of business on the fifth day as the deadline for exercising recall rights. She contends that, while she was prevented from exercising her recall rights, unidentified employees on other occasions were allowed to report to work despite having failed to give notice of their intent to return by the close of business on the fifth day.

Article IX, Section 4(a) of the CBA provides that seniority "shall be broken" if an employee "fails to report for work within five (5) working days after being notified by certified letter to report, unless that employee gives a satisfactory reason such as illness or injury during the five (5) working days given to report." Def.'s Exh. G at 7. Ani-Deng does not dispute that the call placed by her husband on her behalf was made after Jeffboat closed for business on the fifth day following receipt of the certified letter, and that the certified letter she received stated that she was required to notify Jeffboat of her intent to return before the close of business (3:30 p.m.) on the fifth day. However, she contends that, contrary to Jeffboat's contention, it did not consistently and uniformly use the close of business on the fifth day as the deadline to exercise recall rights. In support of her argument, Ani-Deng invokes the affidavit of Evelyn Miller, who was employed in the payroll and human resources departments at the time of Ani-Deng's layoff and recall, in which Miller testified generally that Jeffboat employees and their family members would at times be given up to two weeks to physically report to Jeffboat to begin working

14

after being recalled. She further testified that there was nothing in the CBA that required employees to call in by the close of business (or any other specific time) on the fifth day and that Jeffboat employees who were recalled would often report late into the evening and still be allowed to exercise their contractual right to recall.

These general assertions by Miller are insufficient to defeat summary judgment. Jeffboat does not dispute the fact that employees were allowed to physically report to work up to two weeks after being recalled so long as they responded to the recall notice within the five-day deadline. Jeffboat also does not dispute that it is permissible for employees to communicate their intent to exercise their recall rights after the close of business, as long as it is not on the fifth day. Ani-Deng has adduced no evidence to show that the individuals to whom Miller refers, who were given up to two weeks to physically report back to work, had failed to contact Jeffboat by the close of business on the fifth day to communicate their intent to exercise their recall rights or that any particular individual who was allowed to report late in the evening did so on the fifth day. Nothing in Miller's affidavit addresses these issues. Accordingly, Ani-Deng has failed to establish that there were employees similarly situated to her who were treated more favorably. Nor is there any indication that the 3:30 p.m. deadline imposed by Jeffboat was arbitrary or otherwise pretextual for discrimination in this case. The deadline was clearly set forth in the certified recall letter mailed to Ani-Deng at the time of her recall and, while that deadline is not set out explicitly in the CBA, it also is not contrary to any provision in the CBA addressing recall rights. For these reasons, Ani-Deng's § 1981 claim must be summarily dismissed.

## IV. Equal Pay Act

Ani-Deng claims that Jeffboat violated the Equal Pay Act when it reclassified her from a Welder 1 Class to a Welder 3 Class with an accompanying reduction in pay in retaliation for her having filed an EEOC charge. However, for the reasons detailed above, Ani-Deng has failed to establish that the reclassification was a retaliatory measure. Moreover, the evidence demonstrates that Ani-Deng received the same pay as the other six Jeffboat employees classified as Welder 3 Class, regardless of sex. Accordingly, Ani-Deng's claim brought pursuant to the Equal Pay Act falls critically short. *See Fallon v. State of Ill.*, 882 F.2d 1206, 1208 (7th Cir. 1989) (holding that to establish a *prima facie* case for a violation of the Equal Pay Act, a plaintiff must show, *inter alia*, "different wages are paid to employees of the opposite sex").

## V. Conclusion

For the reasons detailed above, we <u>GRANT</u> Defendant's Motion for Summary Judgment. Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date: ___04/24/2014___                    _[signature]_
                                          SARAH EVANS BARKER, JUDGE
                                          United States District Court
                                          Southern District of Indiana

Distribution:

Matthew R Lemme
attorney@indiana.usa.com

Charles H. Stopher
BOEHL STOPHER & GRAVES, LLP
cstopher@bsg-law.com

Edward H. Stopher
BOEHL STOPHER & GRAVES, LLP
estopher@bsg-law.com

James L. Fischer, Jr.
BOEHL STOPHER & GRAVES, LLP - New Albany
jfischer@bsg-in.com

Dustin Tyrone White
WHITE LAW PRACTICE
wlawpractice@aol.com